IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| PUBLE N.V. *et al.*, | : | Case No. 17-XXXXX (XXX) |
| Debtors.[1] | : | (Motion for Joint Administration Pending) |

**DECLARATION OF CHARIS C. LAPAS PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 AND IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY PLEADINGS**

I, Charis C. Lapas, being duly sworn, hereby depose and state as follows:

1. I am the President of both Puble N.V. ("Puble") and its affiliate Scotia Valley N.V. ("Scotia" and, together with Puble, the "Debtors").

2. I submit this declaration (the "Declaration") pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") and in support of: (a) the Debtors' voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and (b) the motions and applications filed concurrently herewith, including those "first day" motions seeking (i) joint administration of the Debtors' bankruptcy cases; (ii) authorization to file a single, consolidated list of the Debtors' 20 largest creditors and approve the notice of commencement and the form of notice thereof; (iii) extension of the Debtors' deadline to file schedules and statements and related relief, and (iv) authorization for the Debtors to continue to utilize their cash management system and

[1] The Debtors in these chapter 11 cases along with the last four digits of each Debtor's tax identification number are as follows are: Puble, N.V. (7661) and Scotia Valley, N.V (3068).

to dispense with the requirements of section 345 of the Bankruptcy Code (collectively, the "First Day Pleadings"). I am over the age of 18, competent to testify, and authorized to submit this Declaration in support of the Debtors' chapter 11 petitions and the First Day Pleadings described herein.

3. I have served as President of the Debtors since March 26, 2017. Prior to that time, I served as Vice President for each of the Debtors for many years.

4. I am familiar with the Debtors' day-to-day operations, financial condition, business affairs, and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtors' management, the beneficial owners of the Debtors and/or their respective representatives, as well as the Debtors' various outside professional advisors. If I were called to testify, I would testify competently to the facts set forth in this Declaration.

5. This Declaration is divided into four parts. Part I of this Declaration provides an overview of the Debtors' business and operations, including their corporate and capital structure. Part II describes the circumstances leading to the commencement of these chapter 11 cases and the Debtors' restructuring plans. Part III sets forth the relevant facts in support of each of the Debtors' First Day Pleadings. Part IV provides the specific information required by Local Bankruptcy Rule 1007-2.

## PART I: THE DEBTORS' BUSINESSES AND OPERATIONS

### A. The Chapter 11 Filings

6. On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors have

requested joint administration of these chapter 11 cases by motion filed concurrently herewith. No trustee or examiner has been appointed in these cases.

**B. Overview of the Debtors' Businesses and Operations**

*i.* ***Puble N.V.*:**

7. Puble is a Delaware corporation that was initially formed in Curacao, Netherlands Antilles in 1985. In December of 1986, Puble was domesticated and incorporated as a Delaware corporation. On or about June 19, 1986, Puble acquired certain real property located in New York City known as 67-69 Irving Place, New York, NY 10003 (the "Irving Place Property"). The business and purpose of Puble was to own and operate the Irving Place Property as income producing real estate. The Irving Place Property consists of a 3,933 square foot parcel of land and a 12-story commercial office building containing 44,585 rentable square feet with a first floor storefront retail unit, and is currently leased to ten (10) office tenants and one retail tenant. Puble owns no real property other than the Irving Place Property.

8. On February 25, 2010, Puble, as guarantor, executed a Secured Guaranty of Payment ("Guaranty") purportedly undertaking to guarantee the repayment to New York Commercial Bank ("NYCB") of certain obligations of G.P. Homes, L.C., a Virginia limited liability company and an affiliate of the Debtors ("GP"), relating to a $10,750,000 credit facility extended by NYCB to GP (the "GP Loan"). Contemporaneous with the execution of the Guaranty, Puble also executed a Second Mortgage and Assignment of Leases and Rents to secure the repayment of $499,000 of the GP Loan secured by the Irving Place Property. On April 1, 2014, the GP Loan was modified and its maturity date extended to April 1, 2016. The outstanding principal amount of the GP Loan was later reduced and its maturity date further extended to July 1, 2016.

9. GP failed to satisfy the GP Loan, in full, by the July 1, 2016 maturity date. On September 8, 2016, NYCB sent a Notice of Default to Puble, demanding immediate payment of the GP Loan by Puble as a guarantor of the GP Loan. On August 23, 2013, Puble, as borrower, entered into a Consolidation, Modification and Extension Agreement with NYCB consolidating prior mortgages secured by the Irving Place Property and a Gap Note for $2,454,797.06 into one new consolidated loan in the aggregate principal amount of $9,900,000 (the "Puble Loan"). The material terms of the Puble Loan included: (i) an initial interest rate of 3.625% per annum (with an option for Puble to elect certain fixed or adjustable rates during the loan term), (ii) an initial monthly payment of $45,149.08 and (iii) a loan maturity date of September 1, 2023.

10. On September 22, 2016, NYCB purported to accelerate the Puble Loan based upon Puble's alleged default under its Guaranty of the GP Loan. Additionally, Puble ceased making monthly payments on the Puble Loan in September, 2016 and no monthly payments have been made under the Puble Loan since that time. On September 28, 2016, NYCB assigned its interests in the Puble Loan and the GP Loan to Irving DC Lender, LLC ("Irving DC"), which is now the holder of both loans. As of October 21, 2016, Irving DC alleges that the balance due and outstanding under each loan, including default interest, costs, attorney's fees and other charges are as follows: Puble Loan: $9,744,444.65; and GP Loan: $2,720,014.66.

ii. ***Scotia Valley N.V.***

11. Scotia is a Delaware corporation ("Scotia") that was initially incorporated in Curacao, Netherlands Antilles in 1979. In December of 1986, Scotia was domesticated and incorporated as a Delaware corporation. On or about November 28, 1979, Scotia acquired certain real property located in Washington, DC known as 1737 H Street NW, Washington, D.C. (the "H Street Property"). The business and purpose of

Scotia was to own and operate the H Street Property as income-producing real estate. The H Street Property consists of an approximately 17,800 square foot, five-story office building that has been leased to commercial tenants over the years. As a result of recent efforts to sell the building to a single user, tenant leases have not been extended and the H Street Property is now vacant. Scotia owns no other real estate other than the H Street Property and, over the years, the Property was encumbered by mortgages securing various commercial loans from Atlantic Bank of New York.

12. On March 28, 2013, Scotia executed a "First Deed of Trust" in connection with a loan from NYCB (successor in interest to Atlantic Bank of New York) in original principal amount of $4,250,000 (the "First Trust Loan"). The material terms of the First Trust Loan included: (i) an initial interest rate of 3.875% (with an option for Scotia to elect certain fixed or adjustable rates during the loan term); (ii) initial monthly payments of $22,140.78 and (iii) a loan maturity date of April 1, 2023. On February 25, 2010, Scotia also executed a Collateral Security "Second Deed of Trust" in favor of NYCB in the amount of $500,000 (the "Second Trust") in connection with Scotia's guarantee of the GP Loan pursuant to a Secured Guaranty of Payment executed by Scotia on March 5, 2009 as amended and modified from time to time thereafter. The purpose of the Second Trust was to provide additional collateral to NYCB to partially secure the Scotia's purported guaranty of the GP Loan made by NYCB. In April 2014, Scotia executed a "Third Deed of Trust" in the amount of $4,300,000 as security for Scotia's purported guaranty of the GP Loan, which deed of trust, upon information and belief, was never recorded as a matter of record.

13. On or about August 16, 2016, Scotia is asserted to have defaulted on the First Trust Loan by failing to make monthly payments to NYCB. Notice of default was provided by NYCB at that time. On September 2, 2016, NYCB accelerated the First

Deed of Trust Loan and demanded payment of principal in the amount of $3,901,031 plus interest, late charges, costs and attorney's fees. On September 2, 2016, NYCB provided a purported notice of default to Scotia as a guarantor of the GP Loan. On or about September 28, 2016, the First Deed of Trust Loan and the Second Deed of Trust were assigned by NYCB to Irving DC, which entity also acquired the GP Loan and the Puble Loan. .

**C. Corporate Organization and Capital Structure**

14. The Debtors are under common ownership and control through several non-U.S. entities, including entities organized under the laws of Liechstenstein. Such entities in turn are owned and controlled by several members of a single family. These family members have been in discussions about a separation of their joint ownership and control of the Debtors and certain non-Debtor affiliates. Prior to the commencement of these cases, they collectively agreed on a governance structure for the Debtors that ensures the interests of these estates will be protected, including the interests of all stakeholders. In particular, the Debtors' boards are each comprised of two board members, including one appointed by each side of the family. I serve as officer for each Debtor.

**PART II: EVENTS LEADING TO THE CHAPTER 11 CASES**

15. On March 1, 2017, Irving DC delivered its Notice of Intent to Foreclose on the First Trust Loan to Scotia based upon a Notice of Foreclosure filed with the Washington DC Recorder of Deeds on February 23, 2017. Pursuant to the Notice of Foreclosure, the amount owing to Irving DC as of February 10, 2017 was $4,363,217.35, plus attorney's fees, costs and other applicable charges. The foreclosure sale is now set

for **March 29, 2017 at 11:30 A.M.** Further information about the foreclosure sale can be found on the attached Exhibit H, which is the Debtors only litigation matter.

16. Concurrently with the commencement of these chapter 11 cases, the Debtors have filed the following pleadings and, at the "first day" hearing, will seek orders approving the First Day Pleadings and associated proposed orders (collectively, the "First Day Orders"), each as listed on the attached Exhibit A, and respectfully request that the Court consider entering the proposed orders granting such First Day Pleadings. I have reviewed each of the First Day Pleadings and First Day Orders (including the exhibits thereto) and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I believe that the relief sought in each of the First Day Pleadings and First Day Orders is important to the Debtors' ability to transition to, and operate in, chapter 11 with minimum interruption or disruption to their businesses or loss of value. The Debtors engaged in significant efforts prior to the Petition Date to explore options for possible disposition and refinancing of the properties, including discussions with Irving DC. Such efforts are ongoing. The Debtors believe the properties have significant equity value, and that they present a range of opportunities for satisfying all creditors in full while affording potential equity upside for their equity owners. The Debtors therefore commenced these chapter 11 cases to protect the potential loss of equity occasioned by the pending foreclosure, and to utilize the tools afforded by the Bankruptcy Code to promulgate a restructuring plan as soon as possible.

**A. Administrative Pleadings.**

17. The Debtors have filed several "administrative" motions pursuant to which they seek: (a) joint administration of the Debtors' bankruptcy cases;

(b) authorization to file a single, consolidated list of the Debtors' 20 largest creditors and (c) extension of the Debtors' deadline to file schedules and statements and related relief.

*i.* ***Joint Administration***

18. The Debtors are requesting that their chapter 11 cases be jointly administered. The Debtors consist of Puble and its affiliate, Scotia. I believe that the joint administration of these cases will avoid the unnecessary time and expense of duplicative motions, applications, orders and other pleadings that otherwise would need to be filed in each separate case absent joint administration, thereby saving considerable time and expense for the Debtors, and resulting in substantial savings for their estates. I also believe that duplication of substantially identical documents would be wasteful and would needlessly burden the Clerk of the Court with duplicative filings. Further, I believe joint administration will protect parties-in-interest by ensuring that parties in each of the Debtors' respective chapter 11 cases will be apprised of the various matters before the Court in these cases. In addition, I believe it would be far more practical and expedient for the administration of these chapter 11 cases if the Court were to authorize their joint administration. It is envisioned that many of the motions, hearings, and other matters involved in these chapter 11 cases will affect both of the Debtors. Consequently, I believe joint administration will reduce costs and facilitate a more efficient administrative process, unencumbered by the procedural problems otherwise attendant to the administration of separate, albeit related, chapter 11 cases.

19. I believe joint administration will also allow the Court and the Debtors to employ a single docket for the two chapter 11 cases and to combine, and thereby simplify, notice to creditors and other parties in interest in these bankruptcy cases. Finally, I believe joint administration will ease the burden on the United States

Trustee in supervising these bankruptcy cases. Additionally, I believe waiver of the requirements imposed by section 342(c)(1) of the Bankruptcy Code and Bankruptcy Rule 2002(n) that the Debtors' caption and other notices mailed in these chapter 11 cases include the Debtors' tax identification numbers and other information relating to the Debtors is appropriate in these chapter 11 cases. I believe including the Debtors' tax identification numbers and addresses on each caption would be unduly cumbersome, and may be confusing to parties in interest. More importantly, I am advised that waiver of the tax identification number and address requirement is purely procedural in nature and will not affect the rights of parties in interest, especially given that the Debtors propose to include in each pleading they file and notice they mail a footnote listing each of the Debtors, their respective addresses, and the last four digits of their tax identification numbers (if applicable).

*ii.* ***Consolidated List of Creditors and to Establish Notice Procedures***

20. The Debtors are requesting authorization to file a single consolidated list of their top 20 creditors (the "Consolidated Top 20 List") in lieu of a Top 20 List (defined below) for each Debtor. I am advised that Rule 1007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires a debtor to file a list containing information on its twenty largest unsecured creditors, excluding insiders (a "Top 20 List"). I am further advised that the Top 20 List is intended to facilitate the appointment of a creditors' committee by the United States Trustee (the "U.S. Trustee"). If a creditors' committee is appointed, I believe the Consolidated Top 20 List will be sufficient to aid in the U.S. Trustee's appointment of a creditors' committee.

21. Under the circumstances, I believe re-formatting the Creditor List, preparing and filing separate formatted creditor matrices, and otherwise complying with the List Filing Requirements will impose unnecessary administrative burdens on,

and will distract, the Debtors without any corresponding benefit to the estates. In this context, I believe requiring each Debtor to file a Top 20 List would impose an unnecessary administrative burden on the Debtors, without conferring any benefit upon the Debtors' estates or the U.S. Trustee.

*iii.* ***Schedules and Statements Motion***

22. The Debtors are requesting that the Court extend the time by which the Debtors must file their schedules of assets and liabilities and statements of financial affairs ("Schedules and Statements") to 30 days after the current deadline. The requested extension would give the Debtors until 44 days after the Petition Date to file their Schedules and Statements. I believe no creditor or other party in interest will be prejudiced by the requested extension of time for the filing of the Schedules and Statements. Due to the exigent circumstances leading to the filing of these chapter 11 cases, coupled with the limited staffing available to gather and process the information and data needed to complete the Schedules and Statements, I believe the Debtors will be unable to complete their Schedules and Statements by the current deadline imposed by the Bankruptcy Code, as relayed to me by counsel. Given the substantial burdens already imposed on the Debtors' management by the sudden commencement of these chapter 11 cases, the limited number of employees available to collect the information, the competing demands upon such employees, and the time and attention the Debtors must devote to the restructuring process, I believe that "cause" exists to extend the current deadline by thirty (30) days. I believe the requested extension will enhance the accuracy of the Schedules and Statements when filed and help avoid the potential necessity of substantial subsequent amendments.

**B. Operational Motion – Cash Management**

23. In addition to the administrative motions described above, the Debtors have filed a more "operational" focused motion seeking: (a) authority to continue utilizing their cash management practices, bank accounts, and business forms; (b) a waiver of deposit and investment guidelines, and (c) authority to continue intercompany transactions.

24. I am advised that the U.S. Trustee Guidelines, among other restrictions and requirements, prohibit disbursements other than by numbered checks, which checks must bear the applicable debtor's case name and case number, a "debtor in possession" designation, and an indication of the account type. I am further advised that rigid adherence to the U.S. Trustee Guidelines would require, among other things, closure of prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtors in Possession" designation on them. Thus, I believe enforcement of the U.S. Trustee Guidelines in these chapter 11 cases would disrupt the Debtors' business operations, impose burdensome expenses on the estates, and unnecessarily distract the Debtors from their reorganization efforts.

25. Moreover, in the ordinary course of business, the Debtors may also use other various business forms, including, but not limited to, business letterhead, purchase orders, invoices, envelopes, promotional materials, and other business forms and correspondence. To minimize expenses, the Debtors seek authority to continue using the business forms, substantially in the forms existing immediately before the Petition Date and without any reference in such forms to the Debtors' status as debtors in possession. As with the bank accounts, I believe requiring the Debtors to change their existing business forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expense. Furthermore, I believe authorizing

continued use of both the bank accounts and the business forms will make the Debtors' transition into chapter 11 smoother, less costly, and more orderly.

26. Puble maintains several bank accounts with NYCB, while Scotia maintains a bank account with Wells Fargo (collectively, the "Bank Accounts"). Rents paid in connection with the Irving Place Property are remitted to Puble's main operating account, which is also used to pay expenses associated with the property. Puble has two additional operating accounts, as well as a money market savings account, each of which hold de minimis funds as of the Petition Date. Lastly, Puble holds approximately $409,000 in an account designated to hold tenants' security deposits, which account is currently blocked.

27. In order to fund their operations and maintain their properties, the Debtors utilize cash management practices to transfer funds between and among their Bank Accounts to satisfy operational expenses and for other business purposes (the "Cash Management Practices"). Specifically, Puble transfers funds out of its main operating account to Scotia's Bank Account to satisfy certain expenses needed to maintain the H Street Property, such as insurance coverage, as necessary. The Debtors seek to continue these Cash Management Practices, including utilization of the Bank Accounts, to minimize disruption and mitigate administrative costs associated with these chapter 11 cases.

28. Additionally, the Debtors seek a waiver of the various deposit and investment guidelines set forth in to section 345 of the Bankruptcy Code and in promulgations by the Office of the U.S. Trustee (the "Guidelines"). Although NYCB is not listed as an authorized depository in the Guidelines, the Debtors' funds located in those accounts are fully insured by the FDIC. Accordingly, the deposit and investment

requirements under section 345 of the Bankruptcy Code and the Guidelines should be waived.

29. Finally, the Debtors engage in routine intercompany transactions (the "Intercompany Transactions") to satisfy their respective obligations and maintain their properties, give rise to claims (the "Intercompany Claims"). Specifically, as discussed above, Puble transfers funds from its main operating account to Scotia's account to satisfy expenses incurred in maintaining the H Street Property. Continuance of these Intercompany Transactions is vital to preserving the value of the Debtors' estates, particularly the H Street Property owned by Scotia.

30. The Debtors, through the Cash Management Practices, are able to track the flow of funds moving through their respective Bank Accounts and will continue to track such funds post-petition. As such, the Debtors request authority to continue the Intercompany Transactions and further request that any Intercompany Claims arising post-petition be accorded administrative expense priority.

31. Accordingly, I believe entry of an Order granting the relief requested in the Cash Management Motion is in the best interests of the Debtors' estates.

**PART IV: INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2**

32. Local Bankruptcy Rule 1007-2 requires that the Debtors provide certain information, which is set forth below.

33. As required under Local Bankruptcy Rule 1007-2(a)(3), to the best of the Debtors' knowledge and belief, there have been no committees organized prior to the Petition Date.

34. As required under Local Bankruptcy Rule 1007-2(a)(4), Exhibit B lists the following information with respect to each of the holders of the Debtors' twenty (20) largest unsecured claims on a consolidated basis, excluding claims of insiders: the creditor's name, address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), telephone number, the name(s) of person(s) familiar with the Debtors' accounts, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured. In each case, the claim amounts listed on Exhibit B are estimated and subject to verification. In addition, the Debtors reserve their rights to assert remedies, defenses, counterclaims, and offsets with respect to each claim.

35. As required under Local Bankruptcy Rule 1007-2(a)(5), Exhibit C provides the following information with respect to each of the largest secured claims against the Debtors on a consolidated basis: the creditor's name and address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description of the claim, and whether the claim or lien is disputed. In each case, the claim amounts listed on Exhibit C are estimated and subject to verification. In addition, the Debtors reserve their rights to assert remedies, defenses, counterclaims, and offsets with respect to each claim.

36. As required under Local Bankruptcy Rule 1007-2(a)(6), the Debtors' unaudited financial statements showed that: (a) the Debtor Puble has approximately $49,975,000 in total assets and $9,919,000 in total liabilities and (b) the Debtor Scotia has approximately $8,000,000 in total assets and $4,000,000 in total liabilities. A copy of the Debtors respective balance sheets is attached as Exhibit G.

37. As required under Local Bankruptcy Rule 1007-2(a)(7), to the best of my knowledge and belief, as of the Petition Date, the Debtors are not publicly traded.

38. As required under Local Bankruptcy Rule 1007-2(a)(8), to the best of my knowledge and belief, the Debtors do not have any property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

39. As required under Local Bankruptcy Rule 1007-2(a)(9), Exhibit D provides a list of the premises owned, leased, or held under other arrangement from which the Debtors operate their business.

40. As required under Local Bankruptcy Rule 1007-2(a)(10), Exhibit E provides the location of the Debtors' substantial assets, the location of their books and records, and the nature and location of assets held by the Debtors outside the territorial limits of the United States.

41. As required under Local Bankruptcy Rule 1007-2(a)(11), to the best of my knowledge and belief, there is no other action pending against the Debtor's property where a seizure of the Debtors' property may be imminent other than with regard to the aforementioned foreclosure sale of the H Street Property owned by the Debtor Scotia.

42. As required under Local Bankruptcy Rule 1007-2(a)(12), Exhibit F provides a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experience.

43. Local Bankruptcy Rule 1007-2(b)(1)-(2) requires the estimated amount, on a consolidated basis, to be paid to the Debtors' employees (not including officers, directors, and stockholders) for the 30-day period following the filing of the Debtors' chapter 11 petitions and the amount paid and proposed to be paid to officers, stockholders and directors and financial consultants for services for the thirty day

period following the petition date. The estimated amount to be paid to non-officer employees is $10,000 per month. The estimated amount, on a consolidated basis, to be paid to the Debtors' officers (Mr. Lapas, $6,700), the directors receive no compensation. Furthermore, the Debtors have budgeted approximately $25,000.00 to be paid to the Debtors' professionals for the 30-day period following the Petition Date.

To the best of my knowledge and belief I swear under penalty of perjury that the foregoing is true and correct.

Dated: March 28, 2017

By: */s/Charis C. Lapas*
Name: Charis C. Lapas, in his capacity as President of Scotia Valley, N.V. and President of Puble N.V.