**Presentment Date and Time: August 7, 2017, at 12:00 p.m. (prevailing Eastern Time)**
**Hearing Date and Time: August 9, 2017, at 10:00 a.m. (prevailing Eastern Time)**

Rishi Kapoor
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
Email: rkapoor@venable.com

*Attorneys for BCS IRVING LLC d/b/a Bedford Cheese Shop*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
In re:                                                       :   Chapter 11
                                                             :
PUBLE N.V. and SCOTIA VALLEY N.V.,                           :   Case No. 17-10747 (MEW)
                                                             :
                              Debtors.                       :   (Jointly Administered)
                                                             :
------------------------------------------------------------ x

**BCS IRVING LLC'S LIMITED OBJECTION AND RESERVATION OF RIGHTS IN RESPONSE TO DEBTORS' APPLICATION TO APPROVE (I) BIDDING PROCEDURES, (II) NOTICE OF AUCTION AND SALE; AND (III) SALE <u>FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES</u>**

BCS Irving LLC ("<u>BCS</u>") submits this limited objection (the "<u>Limited Objection</u>") to the application of the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>") for an order approving (i) bidding procedures, (ii) a notice of auction and sale, and (iii) a sale free and clear of liens, claims, encumbrances, and other interests (the "<u>Application</u>") [Docket No. 64] currently scheduled for presentment on August 7, 2017 at 12:00 p.m., or, alternatively, to be heard on August 9, 2017, at 10:00 a.m. In support of its Limited Objection, BCS respectfully states as follows:

**BACKGROUND**

A.  **The Bankruptcy Case and Debtors' Sale Application**

1.  On March 28, 2017, Puble N.V. ("Puble") and Scotia Valley N.V. ("Scotia Valley," and together with Puble, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possessions pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On July 27, 2017, the Debtors filed the Application seeking, among other things, approval of sale procedures governing the sale of two commercial properties pursuant to Section 363 of the Bankruptcy Code: (1) a property owned by Puble located in New York City (the "Irving Place Property"), and (2) a property owned by Scotia Valley located in Washington, D.C. (the "H Street Property").  The proceeds from the sale will be used satisfy "all claims" asserted against the Debtors "in full."  *See* Application ¶ 22.

3.  In their Application, the Debtors appear to propose that Puble will assume and assign *all of* the leases at the Irving Place Property to the prospective purchaser.  Application ¶ 7 (defining "Leases" as the leases with the "ten (10) office tenants and one retail tenant" at the Irving Place Property), ¶ 52 ("As part of the Debtors' sale of the Properties, the Debtors will transfer their estates' rights and obligations under the Leases to the Purchaser, who must agree to the terms of the Leases.").

4.  The Debtors, however, neglect to include a list of the "Leases" that will be assigned to the purchaser under the proposed purchase agreement for the Irving Place Property, which is attached to the Application as Exhibit B.  *See* Application, Ex. B thereto (Irving Place Property Purchase Agreement) at 33 [Docket No. 64-4] (attaching in blank "Annex A" to the proposed purchase agreement in which the leases to be assumed and assigned will be listed).  Nor do the

Debtors seek approval of assumption and assignment procedures or a notice of proposed assumption and assignment as contemplated in the proposed purchase agreement. *See id.* § 7.3 at 11 ("Seller shall serve on all non-Seller counterparties to all of its Assigned Contracts a notice specifically stating that Seller is *or may be* seeking the assumption and assignment of such Assigned Contracts.") (emphasis added).

**B.      The BCS Lease at the Irving Place Property**

5.      BCS and its affiliates own and operate artisanal neighborhood cheese stores in Manhattan and Brooklyn known as Bedford Cheese Shop. BCS's Manhattan store is located in the Irving Place Property. In addition to offering high quality, seasonal cheeses, BCS maintains an education and event space for its customers at its Manhattan location.

6.      On or around June 1, 2011, Puble, as landlord, and BCS, as tenant, entered into a lease agreement (as amended or modified, and together with any riders, schedules, exhibits, or other attachments, the "BCS Lease" or "Lease") for the ground floor retail space and a portion of the basement space at the Irving Place Property. *See* BCS Lease, attached as Exhibit A to the Declaration of Rishi Kapoor (the "Kapoor Decl.") filed concurrently herewith; Schedules of Assets and Liabilities for Puble N.V. at 33, 38 [Docket No. 34]. The Lease term commenced on June 1, 2011 and will expire on November 30, 2026.[1]

**LIMITED OBJECTION**

7.      At this juncture, and subject to its Limited Objection, BCS does not object to the ultimate relief sought in the Application, nor does it wish to hamper the sale process generally contemplated by the Application. Rather, BCS seeks to (1) clarify that the Debtors will comply

---

[1]   The version of the BCS Lease submitted in connection with this Limited Objection is unexecuted; however, BCS believes that the BCS Lease is substantively identical to the execution version.

3

18573961

with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and Local Bankruptcy Rules in connection with the proposed sale and assumption and assignment of Irving Place Property leases; and (2) preserve its rights under applicable bankruptcy and non-bankruptcy law.

8.  Moreover, for the sake of clarity and out of an abundance of caution, BCS affirmatively states that it does <u>not</u> consent to a sale of the Irving Place Property free and clear of the BCS Lease or any interests BCS has or may have in the Irving Place Property, including as a lessee thereof. *See* 11 U.S.C. § 363(f)(2); Application ¶ 44 (arguing that an entity with an interest in the Debtors' properties "that does not object to the Sale should be deemed to have consented").

9.  BCS submits this Limited Opposition on three grounds. *First*, the Application appears to provide that all leases at the Irving Place Property, including the BCS Lease, will be assumed and assigned to a purchaser, but does not provide for adequate notice procedures to lease counterparties that specifically identify the leases to be assumed and assigned or the proposed cure amounts. *Second*, the Application does not address the Debtors' obligation to cure and/or compensate BCS for Puble's defaults and ensure that BCS is adequately protected in the event the Debtors intend to assume and assign the Lease. *Third*, BCS reserves its rights under Sections 363(e) and 365, including Section 365(h), of the Bankruptcy Code.

**A.  The Application and Bid Procedures Do Not Provide for Adequate Notice Procedures to Counterparties of Leases That Debtors Seek to Assume and Assign**

10.  While Debtors imply that they intend to assume and assign the BCS Lease in connection with the proposed sale of the Irving Place Property, the Application does not specifically identify the leases that are subject to assumption and assignment.

18573961

11. Nor does the Application seek approval of—or even contemplate—adequate notice procedures consistent with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or the Debtors' own proposed purchase agreement.

12. In the absence of Court-approved procedures governing the assumption and assignment of Debtors' leases, Bankruptcy Rule 6006 governs. Bankruptcy Rule 6006(a) provides that a proceeding to assume and assign, or reject, an unexpired lease is governed by Bankruptcy Rule 9014, which requires the Debtors to seek such relief via a motion. *See* Fed. R. Bankr. P. 6006, 9014. Bankruptcy Rule 6006(f) provides that "a motion to assume or assign multiple . . . unexpired leases that are not between the same parties shall [among other things] . . . list parties alphabetically and identify the corresponding contract or lease [and] specify the terms, including the curing of defaults, for each requested assumption or assignment . . . ."

13. While Debtors acknowledge that Bankruptcy Rule 6006(c) "requires that notice of an application to assume and assign an unexpired executory contract be given to the non-debtor party to such contract," the Application provides that Debtors only intend to provide lessees with "notice of Debtors' proposed sale of the Properties" at some unspecified time. *See* Application ¶ 33. To the extent the Application constitutes the Debtors' "motion" under Bankruptcy Rule 6006(a), the Application falls short of the requirements under both Bankruptcy Rule 6006(f) and the Debtors' own proposed purchase agreement, which specifically states that Debtors will provide lessees whose leases will be assumed and assigned a notice "specifically stating" as much. *See* Application, Ex. B (Irving Place Property Purchase Agreement) ¶ 7.3 at 11. The Debtors must remedy this fundamental deficiency before seeking to assume and assign any leases.

5

18573961

    **B.**    **Assumption and Assignment of the BCS Lease Requires Debtors to Cure Lease Defaults, Compensate BCS for Any Losses, and Ensure That Adequate Assurance of Future Performance Is Provided By the Purchaser**

    14.    As Debtors are well aware, *see* Application ¶¶ 48-52, Section 365 of the Bankruptcy Code specifies that Debtors may not assume or assign the BCS Lease unless (i) they cure all defaults, including non-monetary defaults, or provide adequate assurance that such defaults will be promptly cured, (ii) they compensate, or provide adequate assurance that they will promptly compensate, BCS for actual monetary losses caused by such defaults, and (iii) adequate assurance of future performance is provided. 11 U.S.C. § 365.

    15.    The Application does not address the manner in which the Debtor intends to cure defaults in connection with assumption and assignment of the BCS Lease. Instead, the Debtors claim, without any support whatsoever, that they "do not believe there are any defaults under the Leases that would need to be cured prior to the assumption and assignment of the same." Application ¶ 52, at p. 26 n. 8.

    16.    BCS flatly disagrees with the Debtors' cursory assertion that there have been no defaults under the Lease.[2] To wit, Puble is in default under several provisions of the Lease, including:

    (i)    failing to use its "best efforts" to complete, "as quickly as reasonably practicable," any repairs that require scaffolding and sidewalk sheds, and to remove such scaffolding "as quickly as reasonably practicable after repairs are completed," Kapoor Decl., Ex. A at 30 (Lease ¶ R12);

    (ii)    rendering worthless BCS's rights to seek municipal approval to operate an outdoor café as contemplated under the Lease due to the perpetual presence of scaffolding and sidewalk sheds, *id.* (Lease ¶ R10);

---

[2] BCS reserves its right to lodge any additional objections to the proposed assumption and assignment of its Lease at the appropriate time.

6

(iii)     frustrating BCS's rights to utilize three flagpoles on the Irving Place Property, also due to the perpetual presence of scaffolding and sidewalk sheds, *id.* at 23 (Lease ¶ 73)

(iv)     failing to cure violations that are preventing BCS from obtaining a permanent or temporary certificate of occupancy, *id.* at 29 (Lease ¶ R3);

(v)     failing to keep the property in "a first class manner," *id.* (Lease ¶ R7); and

(vi)     repeatedly entering BCS's leased space without notice in violation of the Lease, *id.* at 2, 8 (Lease ¶¶ 13, 13A-13C).

As a result of these defaults, BCS has suffered hundreds of thousands of dollars in damages.

17.     To the extent these defaults represent ongoing nonmonetary defaults under the Lease, the Debtors are nevertheless obligated to cure the defaults at and after the time of assumption. *See In re Patriot Place, Ltd.*, 487 B.R. 773, 797 (Bankr. W.D. Tex. 2013) ("if a nonmonetary 'default arises from a failure to operate in accordance with a nonresidential real property lease, *then such default shall be cured by performance at and after the time of assumption in accordance with such lease.*'" (quoting 11 U.S.C. § 365(b)(1)(A)) (emphasis in original). The procedures contemplated by the Application fall short of the requirements of Section 365(b)(1)(A) of the Bankruptcy Code (Bankruptcy Rule 6006(f)) and must be modified.

18.     Section 365(b)(1)(B) of the Bankruptcy Code requires that the Debtors compensate, or provide adequate assurance that they will promptly compensate, BCS for damages arising from actual pecuniary loss resulting from Lease defaults. *See* 11 U.S.C. § 365(b)(1)(B); *In re M. Fine Lumber Co., Inc.*, 383 B.R. 565, 568-70 (Bankr. E.D.N.Y. 2008) (citing *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 81 (Bankr. S.D.N.Y. 2004)). The Application does not address compensation for pecuniary losses even though the Lease contains a provision calling for a reduction in rent where, as here, Puble fails to timely remove scaffolding obscuring the front of BCS's store. Kapoor Decl., Ex. A at 30-31 (Lease ¶ R12). Accordingly, and at a minimum, BCS is entitled to be compensated for unapplied reductions before Debtors can assume and assign the Lease.

7

18573961

19. BCS is also entitled to adequate assurance of future performance as a condition of its Lease being assumed and assigned. *See* 11 U.S.C. §§ 365(b)(1)(C), 365(f)(2). While the Debtors and/or the purchaser can adopt a flexible approach to adequately assure that the ongoing Lease defaults will be remedied, they cannot simply ignore this critical non-debtor protection by asserting that no defaults exist. *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

C. **BCS's Rights Under Sections 363(e) and 365(h) of the Bankruptcy Code**

20. To the extent the proposed sale will impact BCS's rights under the Lease, the Application does not address BCS's entitlement to continued possession of the Irving Place Property or provide for other adequate protection in connection with the proposed sale of the Irving Place Property.

21. Pursuant to Section 363(e) of the Bankruptcy Code, the Court must condition the sale of the Irving Place Property as necessary to provide adequate protection to the lessees. *See* 11 U.S.C. § 363(e) ("[O]n request of an entity that has an interest in property . . . proposed to be . . . sold . . . the court . . . shall prohibit or condition such . . . sale . . . as is necessary to provide adequate protection."). Adequate protection in this context is typically considered continued possession of the leased property but may also include cash payments. *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 711-12 (S.D.N.Y. 2014) (ruling that "the plain language of the Code, which requires the bankruptcy court to provide 'adequate protection,' [] may include the indubitable equivalent of the interest, namely, continued possession" and suggesting that, where funds are available, adequate protection may also include compensation in the form of cash payments from the sale proceeds); *see also* 11 U.S.C. § 361.

22. Because the Application appears to leave open the possibility that the rights of lessees of the Irving Place Property may be affected by the sale, and is otherwise silent as to the

8

18573961

adequate protection Debtors plan to offer to lessees under Section 363(e) of the Bankruptcy Code, BCS hereby requests and reserves its right to receive adequate protection under Section 363(e) as a condition of the sale.

23. BCS further reserves its rights under Section 365(h) of the Bankruptcy Code in the event the Lease is rejected. Upon rejection, BCS may either treat the Lease as terminated or retain its appurtenant rights under the Lease. *See* 11 U.S.C. § 365(h)(1)(A)(i)-(ii); *see also Dishi & Sons*, 510 B.R. at 702 (identifying the two avenues for relief provided to lessees of rejected leases under Section 365 of the Bankruptcy Code). If BCS elects to retain its appurtenant rights, it will not consent to the sale of the Irving Place Property free and clear of its interest in the Irving Place Property, and Debtors will be unable to sell the property unless they establish that the proposed sale meets one of the four other grounds set forth in Section 363(f). *See Dishi & Sons*, 510 B.R. at 707. The Application, however, only seeks approval to sell the Irving Place Property free and clear of the secured lender's liens and does not address whether the property can be sold free and clear of the BCS Lease under one of the five grounds set forth in Section 363(f). *See* Application 21-24. Accordingly, the Application does not demonstrate an adequate basis to sell the Irving Place Property free and clear of the Lease in the event the Lease is rejected.

## RESERVATION OF RIGHTS

24. Consistent with and without limiting the reservations of rights contained elsewhere in this Limited Objection, BCS reserves all rights to make any further objections to the Application including objections to the proposed notice procedures, adequacy of notice, and the curing of defaults associated with any assumption and assignment. BCS further reserves all rights to assert any objections to the sale process, validity of the proposed sale of the Irving Place Property, or effectiveness of any assumption and assignment or rejection of the Lease.

18573961

WHEREFORE, BCS respectfully requests that the Court (i) require the Debtors to amend the Application to resolve the issues raised in this Limited Objection, subject to BCS's reservations of rights set forth herein; and (ii) grant such further relief as is necessary or appropriate.

Dated: August 7, 2017
New York, New York

Respectfully submitted,

VENABLE LLP

_/s/Rishi Kapoor_
Rishi Kapoor
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
Email: rkapoor@venable.com

*Attorneys for BCS IRVING LLC d/b/a Bedford Cheese Shop*

18573961